IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KALA TROUTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: _____ |
| ) | Judge: _____ |
| ) | |
| STAT IMAGING SOLUTIONS, LLC, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes now the Plaintiff, Kala Troutman, who sues the Defendant and for her cause of action would show unto this Honorable Court as follows:

1. The Plaintiff, Kala Troutman is a citizen and resident of Knoxville, Knox County, Tennessee.

2. The Defendant, STAT Imaging Solutions, LLC, is a foreign company authorized to do business in Tennessee, with its principal office located at N2273 Butternut Rd., Waupaca, WI 54981-9741, and may be served with process through its registered agent, CT Corporation System, at 800 S. Gay St., Suite 2021, Knoxville, Tennessee 37929-9710.

3. The Defendant is an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C § 1981(a) and T.C.A. § 4-21-101, *et seq.*

4. Jurisdiction is founded upon 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f), and the doctrine of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. Venue is proper under the

1

code provisions of 28 U.S.C. § 1391.

5. Plaintiff is female.

6. Defendant, STAT Imaging Solutions, LLC, is an employer engaging in an industry affecting commerce, and employs more than twenty (20) regular employees.

7. At all times mentioned in the Complaint, Defendant employed more than eight (8) employees in the State of Tennessee.

8. At all times stated herein, Plaintiff was a single mother.

9. The Plaintiff was hired by the Defendant on May 31, 2012 as a Document Preparation Specialist, working at the STAT Imaging Solutions, LLC's office located at Physician's Regional Medical Center in Knoxville, TN.

10. At the time she was hired, Plaintiff explained she was in college at National College to become a registered nurse, and Defendant agreed to schedule her work hours around her class schedule.

11. At the location where Plaintiff worked, the office was open 24 hours a day. During her employment with the Defendant, typically, Plaintiff worked the second shift, from 1:00 P.M. to 9:00 P.M.

12. During her employment, the Plaintiff would try to work at least 48 hours a week in order to receive time and one-half for 8 hours, plus a $50.00 bonus – sometimes the Plaintiff would work 50-55 hours a week.

13. On or about July 12, 2012, Casey London was hired by Defendant to work at the STAT Imaging Solutions, LLC's office located at Physician's Regional Medical Center, in Knoxville, TN as Operations Manager.

2

14. Nathan Pieprzyk, Director of Operations, selected Casey London for hire.

15. As Operations Manager, Casey London was supervisor over the office where Plaintiff worked.

16. As Operations Manager, Casey London had the authority to approve and/or set the Plaintiff's schedule.

17. As Operations Manager, Casey London had the authority to approve any overtime that Plaintiff worked.

18. As Operations Manager, Casey London also had the authority to discipline the Plaintiff, and he had the authority to terminate the Plaintiff.

19. After he was hired by Defendant, Casey London was an agent and employee of Defendant.

20. On July 18, 2012, about a week after he was hired, Casey London, Operations Manager, began sending the Plaintiff numerous texts. The Plaintiff initially thought he was sending the other female employees at this office, similar texts.

21. Thereafter, the text messages and other contacts with Casey London, Operations Manager, began taking on a sexual harassment type nature.

22. Casey London's sexual harassment included making remarks about how "sexy" she looked, putting his arm around her, asking her to go on dates with him, or inviting her to come over and "hang out" with him. His behavior was uninvited and was rejected by Plaintiff, but it continued, and his inappropriate behavior intensified and this began to affect Plaintiff's health.

3

23. In late July, 2012, Plaintiff received her Fall college schedule and she approached Casey London, Operations Manager, about changing her work schedule to 2 days (working from 8:00 AM to 2:00 PM), and 2 nights (working from 2:00 PM to 10:00 PM) to accommodate her class schedule, as was previously agreed by Defendant when she was hired. Casey London refused to change her work schedule unless she "hung out" with him. The Plaintiff refused to hang out with him.

24. Additionally, during this same timeframe, Casey London, Operations Manager, threatened to take her overtime away unless she "hung out" with him. The Plaintiff refused to hang out with him.

25. Thereafter, on or about August 7, 2012, Casey London, Operations Manager, told Plaintiff he could not work with her school schedule, but if she would "come and hang out with me, I will change your schedule. If you don't have a babysitter, then you can go to work tomorrow (Wednesday) and clock in and then leave and hang out." The Plaintiff refused to hang out with Casey London, and even though she was fearful she would lose her job, she, thereafter, formally complained about his conduct as hereinafter stated.

26. Later, on August 7, 2012, the Plaintiff complained to Ozzie Munoz, the Human Resource ("HR") Director, and to Nathan Pieprzyk, Director of Operations for the East Coast Region, about Casey London's sexual harassment of her. During the phone call with Ozzie Munoz and Nathan Pieprzyk, the Plaintiff explained that Casey London had been sexually harassing her, and calling her repeatedly, and sending numerous text messages.

27. At all times stated herein, Ozzie Munoz was an agent and employee of the Defendant.

4

28. At all times stated herein, Ozzie Munoz had the authority to discipline the Plaintiff and he had the authority to fire Plaintiff.

29. At all times stated herein, Ozzie Munoz had the authority to investigate employee complaints, including sexual harassment complaints.

30. At all times stated herein, Nathan Pieprzyk was an agent and employee of the Defendant.

31. At all times stated herein, Nathan Pieprzyk had the authority to discipline the Plaintiff, and he had the authority to fire Plaintiff.

32. At all times stated herein, Nathan Pieprzyk had the authority to investigate employee complaints, including sexual harassment complaints.

33. At Ozzie Munoz's request, on August 8, 2012, the Plaintiff sent an email to him as follows, to-wit:

> On Aug 8, 2012 3:22 PM ozm@statisllc.com wrote:
>
> "Hi Kala,
>
> Are you sending something else? I asked for a history of events in detail.
>
> Thank you
> Ozzie"
> Sent via Blackberry from T-Mobile
>
> On Aug 8, 2012 4:24 PM,"Kala Troutman" ktroutman88@gmail.com wrote:
>
> "Oh I'm sorry I miss understood. He would just call a lot but I just thought he done this to everyone. But yesterday he called me and said he could not work my School schedule <u>but then he said well if you will come and hang out with me I will change your schedule. If you don't have a babysitter then you can go to work tomorrow (Wednesday) and clock in then leave and hang out.</u>"

5

(See Exh. 1)

34. Ozzie Munoz received the email Plaintiff sent him (Exh. 1), prior to Plaintiff being fired.

35. Prior to firing Plaintiff, Defendant did not interview other female employees at the Knoxville office to see if they had been sexually harassed by Casey London, or if they had observed Casey London's conduct toward Plaintiff.

36. Prior to firing Plaintiff, Defendant did advise Casey London of Plaintiff's complaints.

37. Prior to firing Plaintiff, Defendant did not ask Plaintiff to forward the text messages she had received from Casey London.

38. Prior to firing Plaintiff, Defendant did not conduct a sexual harassment investigation of Plaintiff's complaints.

39. It would be highly inappropriate for a male operations manager of Defendant to refuse to change the work schedule of a female subordinate unless she first came and hung out with him.

40. It would violate Defendant's sexual harassment policy for a male operations manager of Defendant to refuse to change the work schedule of a female subordinate unless she first came and hung out with him.

41. Defendant never conducted a sexual harassment investigation of Plaintiff's complaints regarding Casey London prior to, or following the receipt of Exh. 1.

42. On August 10, 2012, the Plaintiff was informed by Defendant's HR Director, Ozzie Munoz, with Nathan Pieprzyk listening on the phone, that she was being fired because she

6

was putting "the company at risk" and it was easier to let her go since she was working her probationary period than Casey London.

43. The Plaintiff, thereafter, on August 10, 2012, requested from Defendant a document stating she had been let go.

44. H.R. Director, Ozzie Munoz, made the decision to terminate the Plaintiff.

45. Director of Operations, Nathan Pieprzyk, made the decision to terminate the Plaintiff.

46. Operations Manager, Casey London, made the decision to terminate the Plaintiff.

47. Thereafter, on August 14, 2012, Defendant sent Plaintiff a separation notice that stated: "Employment terminated within the 90-day probationary period after an investigation into claims made by employee against a manager led us to uncover behavior that we felt was not appropriate." (See Exh. 2).

48. Had the Plaintiff successfully completed her probationary period with Defendant, she would have received a raise, and would have been eligible to receive company benefits, including health insurance for her and her child.

49. Defendant never informed Plaintiff of the alleged "behavior" it claimed it had uncovered that "was not appropriate."

50. The reason given for Plaintiff's termination is pretextual.

51. The Plaintiff was fired in retaliation for complaining about sexual harassment, and/or for rebuffing Casey London's sexual overtures.

52. At or about the date Plaintiff was fired, two other female employees of the Defendant, Amy Moon and Amy Vittitoe, also lodged complaints against Casey London.

53. At or about the date Plaintiff was fired, Amy Moon and Amy Vittitoe complained they had been sexually harassed by Casey London.

54. After Ms. Moon and Ms. Vittitoe complained about Casey London, Defendant conducted an investigation of their complaints.

55. After Ms. Moon and Ms. Vittitoe complained of sexual harassment, Defendant's investigation revealed Casey London had engaged in sexual harassment.

56. Following the complaints of Ms. Moon and Ms. Vittitoe, Casey London was given the choice by the Defendant of being fired or resigning.

57. If Casey London had refused to resign, he would have been fired.

58. After Ms. Moon and Ms. Vittitoe complained, Defendant made no effort to contact Plaintiff to make restitution and/or to offer her job back.

59. On September 17, 2012, Plaintiff's counsel sent Defendant a non-spoliation letter. (See Exh. 3).

60. Defendant received the non-spoliation letter on September 21, 2012. (See Exh. 3).

61. Defendant is responsible and liable for the actions of its agents and employees under the doctrine of respondent superior and under agency principles.

62. The Defendant's agents and employees knew, or should have known, about the sexual harassment, yet it failed to take prompt, effective, remedial action.

63. As a result of the Defendant's actions, the Plaintiff filed a timely charge of sexual harassment and retaliation on or about September 21, 2012 with the Equal Employment Opportunity Commission (EEOC) and the Tennessee Human Rights Commission (THRC). A

8

copy of said charge is attached hereto as Exhibit 4.

64. Plaintiff received a Notice of Right to Sue letter from the EEOC dated April 25, 2013. A true and exact copy of same is attached hereto as Exhibit 5.

65. Plaintiff has satisfied all of the procedural and administrative requirements of § 706 of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-5, by filing a timely written charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission and Tennessee Human Rights Commission, and by filing this Complaint within ninety (90) days from the receipt of the "Notice of Right to Sue."

66. The actions of Defendant's agent and employee constitutes quid pro quo sexual harassment, prohibited by 42 U.S.C. § 2000e, *et seq*, and the Civil Rights Act of 1991, and the Tennessee Human Rights Act, T.C.A. § 4-21-101, *et seq*.

67. The conduct of Defendant's agents and employees as also alleged herein, constitutes unlawful retaliation against the Plaintiff for opposing a practice declared discriminatory in violation of 42 U.S.C. 2000(e), *et seq.*, and the Civil Rights Act of 1991, and a violation of the Tennessee Human Rights Act T.C.A. § 4-21-101, *et seq*.

68. Plaintiff maintains that Defendant's conduct constitutes discrimination against Plaintiff affecting a term, condition, or privilege of employment because of her sex, in violation of 42 U.S.C. 2000(e), *et seq.*, and the Civil Rights Act of 1991, and a violation of the Tennessee Human Rights Act T.C.A. § 4-21-101, *et seq*.

69. The suit is timely filed.

70. As a result of her termination, Plaintiff sustained, and will continue to sustain, a substantial loss of income and benefits, and she sustained, and will continue to sustain,

substantial humiliation, embarrassment, and emotional distress.

71. Plaintiff alleges that the conduct of Defendant was in reckless disregard for Plaintiff's federally protected rights, such as to justify the imposition of substantial punitive damages.

**WHEREFORE**, Plaintiff prays for the following relief, to-wit:

1. Compensatory damages, including front pay (or alternatively reinstatement if this court deems that appropriate).

2. Punitive damages.

3. Prejudgment interest.

4. Reasonable attorney's fees.

5. The costs of this action.

6. A jury to try this cause.

7. Appropriate Injunctive Relief requiring Defendant to abide by the above-referenced statutes, the applicable rules, regulations and the directives and orders of the Equal Employment Opportunity Commission.

RESPECTFULLY SUBMITTED this the 21st June, 2013.

BURKHALTER, RAYSON & ASSOCIATES, P.C.

David A. Burkhalter, II, BPR# 004771
Attorney for Plaintiff
P.O. Box 2777
Knoxville, TN 37901
(865) 524-4974

10